STATE OF MAINE

2001 JAN -5 A 8: 31

SUPERIOR COURT
CRIMINAL ACTION
Docket Nos. KENNEBEC CR-93-016; LINCOLN CR-03-119; and WISCASSET CR-01-608
JMJ-

STATE OF MAINE

v.

DECISION

PAUL BLAKESLEY,

Defendant

The defendant in this case has filed three motions for relief regarding cases in Kennebec County Superior Court, Lincoln County Superior Court, and Wiscasset District Court. The Kennebec County motion is a writ to grant *audita querela* relief. The defendant is asking that the sentence imposed in 1994 for a burglary conviction be modified to read 364 days, rather than the two-year sentence imposed at the time.

The defendant has also filed motions for *coram nobis* relief in the Lincoln County cases. The defendant seeks to set aside a 2003 conviction in Lincoln County Superior Court for marijuana cultivation, and a 2001 marijuana cultivation conviction in Wiscasset District Court.

## Facts

The defendant was born Paul McGruer in England on October 10, 1974. In 1979, when he was four years old, his mother married Robert Blakesley, an American citizen. The family moved to the United States in 1980. The defendant has lived in Maine since that time. He attended schools in Rome and Wilton. During his high school years, he had several behavioral problems and underwent extensive counseling. During the second half of his sophomore year and the first half of his junior year while a student at Messalonskee High School, he voluntarily admitted himself to the Weymouth House, a

residential behavioral program located in Bristol, Maine. While there, he attended Lincoln Academy in Newcastle.

He returned to Messalonskee High School for his senior year in October 1992, but never completed his senior year and never graduated.

In 1992, the defendant was involved in a burglary in Kennebec County as well as a burglary in Franklin County. The sentence he received in the Kennebec County case is the reason for the defendant's *audita querela* motion, due to the fact that following his conviction, amendments to federal immigration law, see Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996); Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), retroactively expanded the definition of "aggravated felony" for immigration purposes. Thus, although prior to this time, including the period during which the defendant was sentenced, the defendant's conviction was not an "aggravated felony" under federal immigration law, these recent amendments brought the defendant within the scope of the definition and subject to deportation. See 8 U.S.C. §§ 1101(a)(43), (48)(B).

Following the burglary conviction, the defendant had other problems and received several misdemeanor convictions. In 1996, he was convicted for criminal trespass and received a $200 fine. In 1997, he was convicted of furnishing alcohol and received a $400 fine. In 2001, the defendant appeared in the Wiscasset District Court and pled guilty to marijuana cultivation, whereupon he received a $300 fine relative to five marijuana plants. During the District Court proceedings, the defendant was unrepresented by counsel, and during the sentencing process there was no inquiry made into the defendant's citizenship status or into whether he knew of any consequences resulting from his plea and status as a non-citizen. The defendant is attempting to vacate this conviction pursuant to his motion for *coram nobis*.

In 2002, the defendant was convicted of assault (class D) and criminal mischief and spent a weekend in jail. Finally, in 2003, and while represented by counsel in Lincoln County Superior Court, he pled guilty to marijuana cultivation. Neither the court nor his attorney inquired into whether the defendant was a non-citizen. The defendant is also attempting to vacate this conviction pursuant to his motion for *coram nobis*.

Following these difficulties, the defendant got married on October 7, 2007, and has worked construction in Massachusetts since that time.

**Discussion**

1. Kennebec County Case—Motion for *Audita Querela*.

The court finds that this writ is available to the defendant. Federal law provides for an "All-Writs Act," see 28 U.S.C. § 1651, which gives federal courts authority to grant relief through writs, including *coram nobis* and *audita querela*, where the federal post-conviction framework is insufficient.[1] See United States v. Morgan, 346 U.S. 502, 510-11 (1954) (holding that the enactment of 28 U.S.C. § 2255 (post-conviction review) did not supersede the availability of the writ of *coram nobis*); United States v. Ayala, 894 F.2d 425, 428 (D.C. Cir. 1990) ("The teaching of Morgan is that federal courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law."). Although, in Maine, there is no comparable "All-Writs" statute, the court finds authority for the writ of *audita querela* in common law. See 4 M.R.S. § 105 ("the Superior Court has and shall exercise . . . all of the powers, duties and authority necessary for exercising the jurisdiction in any and all matters that were, prior to January 1, 1930, within the jurisdiction of the Supreme Judicial Court or

---

[1] "[T]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute." United States v. Barrett, 178 F.3d 34, 55 (1st Cir. 1999).

any of the Superior Courts . . . .") Although rarely invoked, the common law writ of *audita querela* has been recognized in Maine. See, e.g., Bryant v. Johnson, 24 Me. 304, 306-07 (1844) (denying writ of *audita querela* where petitioner suffered no injury).

Further, Maine's post-conviction review statute does not displace the writ of *audita querela*.[2] First, the court notes that, unlike habeas corpus and *coram nobis*, Maine's post-conviction review statute does not expressly mention *audita querela*. See 15 M.R.S. § 2122. Moreover, unlike post-conviction review, which provides a remedy for certain limited consequences of an invalid judgment, at common law, *audita querela* relief was granted because of unforeseen consequences arising after a presumably *valid* judgment. See Ira P. Robbins, *The Revitalization of the Common-Law Civil Writ of Audita Querela as a Post-Conviction Remedy in Criminal Cases: The Immigration Context and Beyond*, 6 GEO. IMMIGR. L.J. 643, 682 (1992). Finally, the rationale for the survival of writs such as *coram nobis* and *audita querela* in the face of federal post-conviction review—namely, to complete the full panoply of criminal post-conviction remedies—is equally applicable at the state level. See Morgan, 346 U.S. at 510-11 (reasoning that the availability of the writ of *coram nobis* was no superceded because the petitioner, who was no longer in custody, was not eligible for statutory post-conviction relief); United States v. Kimberlin, 675 F.2d 866, 869 (7th Cir. 1982) (assuming the availability of the writ "if a criminal defendant could show that relief from a judgment by means of *audita querela* was necessary to plug a gap in the system of federal postconviction remedies"). Because the court has discerned nothing in the language, legislative history, or application of Maine's post-conviction review statute that would abrogate the remedy that the writ of *audita querela* would provide in this case, and due to the need to provide the complete

---

[2] This writ, along with *coram nobis*, was formally abolished in civil cases by M.R. Civ. P. 60(b).

spectrum of post-conviction remedies, the court finds that the writ of *audita querela* has not been completely supplanted by statutory post-conviction review.[3]

The U.S. Supreme Court has recognized that "few courts ever have agreed as to what circumstances would justify relief under these old remedies", such as *audita querela*. Klapprott v. United States, 335 U.S. 601, 614 (1949) (opinion of Justice Black). The writ is generally sought "to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise." United States v. Holder, 936 F.2d 1, 3 (1st Cir. 1991) (quoting Black's Law Dictionary). Although not a uniform requirement,[4] First Circuit precedent provides that "the writ of *audita querela* can only be available where there is a legal objection to a conviction, which has arisen subsequent to that conviction, and which is not redressable pursuant to another post-conviction remedy." Id. at 5. Moreover, where, but for the defendant's own neglect, the defendant had the opportunity to avoid the consequences of judgment, the writ of *audita querela* is unavailable. See Wintle v. Wright, 117 A.2d 68, 70 (Me. 1955). After considering the necessary factors in determining whether this writ should be granted, the court finds that the defendant has proved that he is entitled to relief. The consequential harm (deportation) arising after the judgment, imposed retroactively, was neither contemplated nor foreseeable at the time of the defendant's sentence. The defendant cannot be faulted for failing to raise this issue at the time of sentencing. As the defendant's conviction will continue to stand, and his punishment, which has been

---

[3] Furthermore, at least one Maine court, in Penobscot County, has granted a motion for *audita querela* due to the immigration law problems confronting the defendant. See State v. Heber, CR-92-1051 (Me. Super. Ct., Penob. Cty., Mar. 25, 1999) (Mead, J.).

[4] See Ira P. Robbins, *The Revitalization of the Common-Law Civil Writ of Audita Querela as a Post-Conviction Remedy in Criminal Cases: The Immigration Context and Beyond,* 6 GEO. IMMIGR. L.J. 643, 682 (1992) (criticizing requirement as "incorrect as a historical matter")

completed, will in no way be diminished, the state's interest in preserving his record of conviction will not be prejudiced. Accordingly, in the highly unusual circumstances of this case, the court grants the petitioner's motion for *audita querela* and modifies his underlying sentence to read 364 days instead of two years.

2.     Wiscasset District Court – Motion for *Coram Nobis*.

Similar to the discussion involving *audita querela*, the court finds and concludes that the writ of *coram nobis* is an available remedy for the defendant. *Coram nobis* was originally part of the historical common law of Maine. See Dwyer v. State, 151 Me. 382, 391-92, 120 A.2d 276, 282 (1956). Pursuant to the rationale articulated by the Supreme Court in Morgan, neither M.R. Civ. P. 60(b),[5] which applies in the civil context, nor post-conviction review bars *coram nobis* relief in this case. 346 U.S. at 510-11. Although the availability of the common law writ of *coram nobis* was superceded by statutory *coram nobis* procedure in 1961, see Thorensen v. State, 239 A.2d 654, 655-56 (Me. 1968), and subsequently by post-conviction review, see 15 M.R.S. § 2122, the court does not view these provisions as abrogating common law *coram nobis* in situations where a defendant seeks to challenge a conviction but due to the fact that there is no present restraint, post-conviction statutory relief is not applicable. See 15 M.R.S. § 2122 (providing a "a *remedy for illegal restraint and other impediments* specified in section 2124, to "*replace[] the remedies* available pursuant to . . . coram nobis") (emphasis supplied); Morgan, 346 U.S. at 510-11. The specific reference in the statute setting aside *coram nobis* applies only to those cases that are covered by the post-conviction statute. Because the defendant is under no restraint or impediment,[6] and thus post-conviction review provides no remedy, *coram*

---

[5] M.R. Civ. P. 60 is substantially identical to Federal Rule of Civil Procedure 60(b). See Allen v. Cole Realty, Inc., 325 A.2d 19, 25 (Me. 1974).

[6] Pending deportation proceedings are not the functional equivalent of any restraint or impediment under Maine's post-conviction review statute. Loi Van Ngo v. State, 2008 ME 71, ¶ 9, 946 A.2d 424, 428.

*nobis* is necessary to "plug the gap" in the available post-conviction remedial scheme. See Ira P. Robbins, *The Revitalization of the Common-Law Civil Writ of Audita Querela as a Post-Conviction Remedy in Criminal Cases: The Immigration Context and Beyond*, 6 GEO. IMMIGR. L.J. 643, 665 (1992) ("The writ is generally available to individuals who are ineligible for [federal post-conviction review] because they have completed their sentences and are no longer in custody.").

Turning to whether the circumstances of the defendant's case meet the legal standard for *coram nobis* relief, the court must determine whether, as a matter of law, errors of fact existed at the time of judgment which affected the validity and regularity of the proceedings, and which, "if known at the time of trial would have prevented the judgment from being made." Dwyer, 151 Me. at 395-96, 120 A.2d at 283-84. The determinative question before the court is whether the facts indicate that the defendant's plea to the marijuana cultivation in Wiscasset District Court was not voluntarily and knowingly made because he was not aware of the immigration consequences resulting from his plea. See Brady v. United States, 397 U.S. 742, 748 (970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); State v. Comer, 584 A.2d 638, 640 (Me. 1990) ("A plea is valid if it is made voluntarily with knowledge of the elements of the crime, the penalty that might be imposed and the constitutional rights relinquished by foregoing trial.").

As it is undisputed that no inquiry was made into the defendant's citizenship status, the question turns upon whether or not immigration consequences such as those facing the defendant represent a collateral consequence or a direct consequence. See Aldus v. State, 2000 ME 47, ¶ 18 nn. 6-8, 748 A.2d 463, 469-70 (explaining the basis of the collateral consequences doctrine is that "neither courts nor defense counsel can be

expected to be aware of the multitude of potential consequences that may flow from a conviction").

The court finds that the immigration consequences in this case are a direct consequence and not a collateral consequence. "The fact that deportation is an extremely serious matter cannot be questioned." Aldus, 2000 ME 47, ¶ 18 n. 8, 748 A.2d at 470. While the "extremely serious" nature of this consequence is not dispositive of the issue, the importance of this consequence is amply demonstrated in several contexts, including ineffective assistance of counsel, see Aldus, 2000 ME 47, ¶ 18, 748 A.2d at 470, sentencing, State v. Svay, 2003 ME 93, ¶ 13, 828 A.2d 790, 794, and in Rule 11 of the Maine Rules of Criminal Procedure. Indeed, Rule 11 currently includes a requirement that the court specifically ask the defendant before taking his plea whether or not he is a citizen, and whether he is aware of possible immigration consequences if he is a noncitizen. See M.R. Crim. P. 11(h). Although this provision of Rule 11 was not in effect at the time the defendant was sentenced, certainly its subsequent inclusion through the Maine Supreme Judicial Court's enactment in 2002 sheds light on the significance of this consequence.[7] Because no inquiry was made into the defendant's citizenship, and no resultant immigration consequences of his decision to plead guilty were raised or discussed, the court finds that the defendant's plea was not knowingly

---

[7] The court finds persuasive a concurrence by D.C. Circuit Judge Mikva in United States v. Del Rosario, 902 F.2d 55 (D.C. Cir. 1990). See also Daniel J. Murphy, *Guilty Pleas and the Hidden Minefield of Immigration Consequences for Alien Defendants: Achieving a "Just Result" by Adjusting Maine's Rule 11 Procedure*, 54 Me. L. Rev. 157, 185-86 (2002). Judge Mikva took issue with the majority's characterization of deportation as a "collateral" consequence, arguing that "[t]he possibility of being deported can be -- and frequently is -- the most important factor in a criminal defendant's decision how to plead." Del Rosario, 902 F.2d at 61. Judge Mikva urged that "the Rules Committee of the Judicial Conference . . . consider amending Rule 11 of the Rules of Criminal Procedure to require a judge taking a guilty plea to inform an alien that pleading guilty might result in deportation." Id. That the Law Court enacted amendments to Maine's Rule 11 similar to those urged by Judge Mikva, obviously critical of characterizing deportation as a collateral consequence, is instructive in analyzing this issue.

and voluntarily made. For this reason, the court grants the writ for motion of *coram nobis* and vacates the underlying conviction.

3.    <u>Lincoln County Superior Court – Motion for *Coram Nobis*</u>.

Similar to the conviction in the Wiscasset District Court, the defendant was not asked whether he was a noncitizen and whether he was aware of the consequences of his status as a noncitizen. Unlike the Wiscasset District Court case, Rule 11 had been changed so as to require a citizenship inquiry at the time of this plea in Lincoln County Superior Court. The court failed to ask him whether or not he was a noncitizen. For the same reasons as stated above, and further bolstered by the fact that Rule 11 had already been changed to require an inquiry into citizenship, the court finds that the defendant's plea was not knowing and voluntary. For this reason, the court grants the defendant's motion for *coram nobis* and vacates the conviction for marijuana cultivation.

The entry is

(1) The Defendant's Motion for *Audita Querela* relief is GRANTED. The Defendant's sentence in Kennebec County Superior Court (Docket No. CR-93-016) is hereby MODIFIED to read 364 days, all but 14 days suspended.

(2) The Defendant's Motion for *Coram Nobis* relief is GRANTED. The Defendant's conviction for Marijuana Cultivation in Wiscasset District Court (Docket No. CR-01-608) is hereby VACATED.

(3) The Defendant's Motion for *Coram Nobis* relief is GRANTED. The Defendant's conviction for Marijuana Cultivation in Lincoln County Superior Court (Docket No. CR-03-119) is Hereby VACATED.

Dated: June____5___, 2009

Joseph M. Jabar
Justice, Superior Court

STATE OF MAINE                                      SUPERIOR COURT
    vs                                              KENNEBEC, ss.
PAUL A BLAKESLEY                                    Docket No  AUGSC-CR-1993-00016
200 COUNTY CLUB ROAD
BOOTHBAY ME 04537                                   **DOCKET RECORD**


DOB: 10/10/1974
Attorney: BRUCE MALLONEE                    State's Attorney: EVERT FOWLE
          RUDMAN & WINCHELL
          84 HARLOW ST
          PO BOX 1401
          BANGOR ME 04402-1401
          RETAINED 04/09/2009

Filing Document: INDICTMENT                 Major Case Type: FELONY (CLASS A,B,C)
Filing Date: 01/04/1993

## Charge(s)

1   **BURGLARY**                                    **10/19/1992 ROME**
**Seq 4819  17-A  401(1)**          **Class B**


2   **THEFT BY UNAUTHORIZED TAKING OR TRANSFER**    **10/19/1992 ROME**
**Seq 2815  17-A  353(1)**              **Class E**


## Docket Events:

04/10/2009 FILING DOCUMENT -  INDICTMENT FILED ON 01/04/1993

04/10/2009 NOTE -  PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 01/04/1993

          TRANSFER -  BAIL AND PLEADING GRANTED ON 01/04/1993

          TRANSFER -  BAIL AND PLEADING REQUESTED ON 01/04/1993

04/10/2009 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 01/14/1993

04/10/2009 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 01/14/1993

          COPY TO PARTIES/COUNSEL
04/10/2009 Party(s):  PAUL A BLAKESLEY
          ATTORNEY -  APPOINTED ORDERED ON 01/14/1993

          Attorney:  JOHN PELLETIER
04/10/2009 BAIL BOND -  PR BAIL BOND FILED ON 01/19/1993

04/10/2009 Charge(s): 1,2
          HEARING -  RULE 11 HEARING HELD ON 10/28/1993
          ROBERT E CROWLEY , JUSTICE
          Attorney:  JOHN PELLETIER
          DA:  PAUL RUCHA          Reporter: JANETTE COOK
          Defendant Present in Court

                READING WAIVED
04/10/2009 Charge(s): 1,2
                PLEA - GUILTY ENTERED BY DEFENDANT ON 10/28/1993


04/10/2009 Charge(s): 1,2
                FINDING - GUILTY ENTERED BY COURT ON 10/28/1993


04/10/2009 Charge(s): 1
                RULING - ORIGINAL ORDERED ON 10/28/1993


                It is adjudged that the defendant is guilty of 1 BURGLARY 17-A 401(1) Class B as charged and
                convicted.

                The defendant is sentenced to the DEPARTMENT OF CORRECTIONS for a term of 2 year(s).

                It is ordered that all but 14 day(s) of the sentence as it relates to confinement be suspended.

                It is ordered that the defendant be placed on a period of probation for a term of 3 year(s) upon
                conditions attached hereto and incorporated by reference herein.

                Said Probation to commence after completion of the unsuspended term of imprisonment.

                It is ordered that the defendant forfeit and pay the sum of $150.00 as restitution through
                Probation.

                @ $150




**Special Conditions of Probation:**
1. refrain from all criminal conduct and violation of federal, state and local laws.
2. report to the probation officer immediately and thereafter as directed and within 48 hours of your release from jail.
3. answer all questions by your probation officer and permit the officer to visit you at your home or elsewhere.
4. obtain permission from your probation officer before changing your address or employment.
5. not leave the State of Maine without written permission of your probation officer.
6. maintain employment and devote yourself to an approved employment or education program.
7. not possess or use any unlawful drugs and not possess or use alcohol excessively.
8. identify yourself as a probationer to any law enforcement officer if you are arrested, detained or questioned for any reason and notify your probation officer of that contact within 24 hours.
9. waive extradition back to the State of Maine from any other place.
10. not own, possess or use any firearm or dangerous weapon if you have ever been convicted of a crime in any jurisdiction with a potential penalty of one year or more or any crime involving domestic violence or the use of a firearm or dangerous weapon.


not own, possess or use any firearm or dangerous weapon.



submit to random search and testing for firearms at the direction of a law enforcement officer.

pay restitution as stated earlier.

04/10/2009 Charge(s): 1
RULING - ORIGINAL ISSUED ON 04/10/2009

DEFENDANT ACKNOWLEDGES RECEIPT
04/10/2009 Charge(s): 2
RULING - ORIGINAL ORDERED ON 10/28/1993

It is adjudged that the defendant is guilty of 2 THEFT BY UNAUTHORIZED TAKING OR TRANSFER 17-A 353(1) Class E as charged and convicted.

The defendant is sentenced to the KENNEBEC COUNTY JAIL for a term of 7 day(s).

This sentence to be served concurrently with: AUGSCCR199300016  Charge: 1

04/10/2009 Charge(s): 2
RULING - ORIGINAL ISSUED ON 04/10/2009

DEFENDANT ACKNOWLEDGES RECEIPT
04/10/2009 Charge(s): 1
MOTION - OTHER MOTION FILED BY DEFENDANT ON 04/09/2009

MOTION FOR AUDITA QUERELA RELIEF FROM UNFORESEEABLE AND UNINTENDED CONSEQUENCES OF CRIMINAL SENTENCE
04/10/2009 ORDER - COURT ORDER ENTERED ON 04/08/2009
JOSEPH M JABAR , JUSTICE
ASSIGNED TO JUSTICE JABAR
04/10/2009 Charge(s): 1,2
MOTION - OTHER MOTION FILED BY DEFENDANT ON 04/09/2009

MOTION FOR LEAVE TO FILE MEMORANDUM EXCEEDING TEN PAGES IN LENGTH
04/10/2009 HEARING - CONFERENCE SCHEDULED FOR 04/09/2009 @ 3:30

PHONE CONFERENCE
04/10/2009 Charge(s): 1
ABSTRACT - SBI EDI ON 04/10/2009

LAST EDI SENT: 04/10/2009 21:03:39
04/10/2009 Charge(s): 2
ABSTRACT - SBI EDI ON 04/10/2009

LAST EDI SENT: 04/10/2009 21:03:40
04/22/2009 HEARING - OTHER MOTION SCHEDULED FOR 05/21/2009 @ 8:30

MOTION FOR LEAVE TO FILE MEMORANDUM EXCEDING 10 PAGES IN LENGTH
04/22/2009 HEARING - OTHER MOTION SCHEDULED FOR 05/21/2009 @ 8:30

MOTION FOR AUDITA QUEREAL RELIEF FROM UNFORESEEABLE AND UNINTENDED CONSEQUENCE OF CRIMINAL SENTENCE
04/22/2009 HEARING - OTHER MOTION NOTICE SENT ON 04/22/2009

MOTION FOR LEAVE TO FILE MEMORANDUM EXCEDING 10 PAGES IN LENGTH
04/22/2009 HEARING - OTHER MOTION NOTICE SENT ON 04/22/2009

MOTION FOR AUDITA QUEREAL RELIEF FROM UNFORESEEABLE AND UNINTENDED CONSEQUENCE OF CRIMINAL
SENTENCE
04/22/2009 Party(s): PAUL A BLAKESLEY
ATTORNEY - WITHDRAWN ORDERED ON 04/22/2009


Attorney: JOHN PELLETIER
04/22/2009 Party(s): PAUL A BLAKESLEY
ATTORNEY - RETAINED ENTERED ON 04/09/2009


Attorney: BRUCE MALLONEE
06/05/2009 HEARING - OTHER MOTION HELD ON 05/21/2009
JOSEPH M JABAR , JUSTICE
DA: EVERT FOWLE
Defendant Present in Court


MOTION FOR AUDITA QUEREAL RELIEF FROM UNFORESEEABLE AND UNINTENDED CONSEQUENCE OF CRIMINAL
SENTENCE
06/05/2009 ORDER - COURT ORDER ENTERED ON 06/05/2009
JOSEPH M JABAR , JUSTICE


A TRUE COPY
ATTEST: _____
Clerk