2011 ME 122

**STATE of Maine**

v.

**Fahad ALI.**

Supreme Judicial Court of Maine.

Argued: Oct. 11, 2011.
Decided: Dec. 6, 2011.

---

Robert A. Levine, Esq. (orally), Portland, for appellant Fahad Ali.

William J. Schneider, Attorney General, and William R. Savage, Asst. Atty. Gen: (orally), Augusta, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

Dissent: SILVER, J.

LEVY, J.

[¶ 1] Fahad Ali appeals from a judgment of the Superior Court (Cumberland County, *Cole, J.*) denying his motion for a new trial following his conviction for aggravated trafficking in scheduled drugs (Class C), 17–A M.R.S. § 1105–A(1)(E)(6) (2010). Ali argues that he is entitled to a new trial pursuant to M.R.Crim. P. 1, 2, and 33 because he was denied the effective assistance of counsel guaranteed by the Sixth Amendment when his attorney failed to advise him of the immigration consequences of his guilty plea. The State argues that the motion for a new trial was properly denied because post-conviction review is the exclusive avenue for judicial review of an ineffective assistance of counsel claim. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Ali is a native and citizen of Somalia who, at the age of ten, was admitted to the United States in 2000 as a refugee.

[¶ 3] In April 2008, Ali was arrested near Portland High School with seven small bags of marijuana in his possession. After waiving his *Miranda* rights, Ali admitted that the bags contained marijuana and that he was trying to sell the bags for ten dollars each. Ali was charged with aggravated trafficking in scheduled drugs, pursuant to 17–A M.R.S. § 1105–

A(1)(E)(6). At the time of his arrest, Ali was eighteen years old.

[¶ 4] Following the appointment of counsel, Ali entered a plea of not guilty at his arraignment. At a subsequent hearing, Ali changed his plea to guilty. The court asked Ali and his attorney about Ali's citizenship status. Ali responded that he was not a citizen of the United States and that he was born in Somalia. His lawyer stated:

Judge, I have explained to him that there is a consequence of possible immigration with this conviction as well as some of his juvenile record may have already caused that consequence. His mother is working with the immigration project[, it is] my understanding[,] to work on that and figure out whether he can still qualify or not or make sure he's not deported.

[¶ 5] The court then asked Ali a series of questions regarding his understanding of the possible immigration consequences of his conviction:

Court: You understand that a conviction here of this charge may in fact result in you being deportable from this country?

Ali: Yes, Your Honor.

Court: Do you understand that?

Ali: Yes, Your Honor.

Court: And you have talked about this with your attorney here?

Ali: Yes, Your Honor.

Court: And you and your mother are also working with the immigration project in regard to this issue?

Ali: Yes, Your Honor.

Court: You understand there can be no promises or guarantees that you will be permitted to stay in this country if you in fact are convicted of this charge?

Ali: Yes, Your Honor.

Court: Do you still want to go ahead with your plea?

Ali: Yes, Your Honor.

[¶ 6] The court accepted Ali's plea, ordered him to pay a fine of $400, and sentenced him to four months' imprisonment, to be served at Long Creek Youth Development Center concurrently with a sentence for a separate juvenile matter. By September 14, 2010, Ali had served his sentence and paid his fine.

[¶ 7] In February 2011, Ali received a notice to appear before an immigration judge, from the United States Department of Homeland Security. The notice indicated that Ali's immigration status had been adjusted to that of a lawful permanent resident on September 11, 2008, but that based on his October 2008 conviction for aggravated trafficking in scheduled drugs, he was subject to removal pursuant to sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act.[1]

[¶ 8] On March 10, 2011, Ali filed a motion for a new trial and to appoint counsel, citing Rules 1, 2, and 33 of the Maine Rules of Criminal Procedure as the basis for the relief sought. Ali asserted that he was denied the effective assistance of counsel when he entered his guilty plea because his attorney did not adequately communicate to him the immigration consequences of his criminal conviction. Ali

1. Section 237(a)(2)(A)(iii) provides that lawful permanent residents are subject to removal if convicted of an aggravated felony, which is defined in section 101(a)(43)(B) of the Act and includes an offense relating to the illicit trafficking in a controlled substance. Immigration and Nationality Act §§ 101(a)(43), 237(a)(2)(A)(iii), 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii) (2011). Section 237(a)(2)(B)(i) provides for removal of lawful permanent residents convicted of violating a law relating to controlled substances, other than a single offense involving possession for one's own use of thirty grams or less of marijuana. Immigration and Nationality Act § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) (2011).

further argued that the fact of his imminent removal and the lack of available relief is new evidence that qualifies as grounds for a new trial pursuant to M.R.Crim. P. 33 and that a new trial should be granted "in the interest of justice, due process and effective assistance of counsel." Ali's motion also indicated that at the time of filing, he was in Immigration and Customs Enforcement detention awaiting removal to Somalia. The State filed a response opposing Ali's motion.

[¶ 9] A hearing was held on Ali's motion for a new trial in March 2011. After considering the motion, supporting documents, and oral arguments presented by each party, the court denied the motion for a new trial. After considering whether the Supreme Court's decision in *Padilla v. Kentucky* supported Ali's Sixth Amendment claim, the court concluded that *Padilla*'s holding did not apply retroactively to the date of Ali's plea and that, in any event, Ali was sufficiently aware of the immigration consequences of his plea at the time he entered it. *See Padilla v. Kentucky,* —— U.S. ——, ——, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010) (holding that "counsel must inform her client whether his plea carries a risk of deportation"). This appeal followed.

## II. LEGAL ANALYSIS

[¶ 10] This is the third in a recent trilogy of cases brought by non-United States citizens residing in Maine who seek to set aside a state criminal conviction, based on a claim of ineffective assistance of counsel, in the hope of avoiding deportation. As with the prior two cases, we decide this case based on matters of process, without reaching the merits of the ineffective assistance of counsel claim. We address (A) our prior decisions in *Ngo I* and *Ngo II*, (B) the Supreme Court's decision in *Padilla v. Kentucky,* and (C) the application of these precedents to the circumstances of Ali's motion for a new trial.

### A. *Ngo I* and *Ngo II*

[¶ 11] Loi Ngo, a citizen of Vietnam and resident of the United States, pleaded guilty to sexual abuse of a minor and criminal threatening in 1998. *State v. Ngo (Ngo I),* 2007 ME 2, ¶ 2, 912 A.2d 1224. Ngo served his sentence and his probation was terminated in 1999. *Id.* Several years later, in 2006, Ngo was taken into custody by federal immigration officials who had determined that Ngo was eligible for removal based on his criminal convictions. *Id.*

[¶ 12] Ngo first filed a motion to vacate his convictions in the District Court, pursuant to M.R.Crim. P. 1(c). *Id.* ¶ 3. Ngo argued that his conviction in 1998 was unconstitutional because his attorney had failed to warn him of the immigration consequences of his guilty plea. *Id.* Ngo also argued that because he was not under any restraint or impediment as required by the post-conviction review statute, 15 M.R.S. § 2124 (2010), Rule 1(c) was his sole remedy. *Id.* After his motion was dismissed by the District Court, Ngo appealed to this Court. *Id.*

[¶ 13] We affirmed the District Court's dismissal of Ngo's motion because Rule 1(c) gives the court authority to act when no procedure or remedy has been specified by a rule or statute, but, in Ngo's case, the post-conviction review statute was intended to provide the relief he was seeking. *Id.* ¶ 6.

[¶ 14] Ngo then filed a petition for post-conviction review with the Superior Court, pursuant to 15 M.R.S. §§ 2121–2132 (2010). *Ngo v. State (Ngo II),* 2008 ME 71, ¶ 5, 946 A.2d 424. Ngo also challenged the constitutionality of the post-conviction review statute, arguing that if the jurisdictional requirements of the statute prevented him from pursuing his ineffective assistance of counsel claim, then

the statute was unconstitutionally arbitrary as applied to him. *Id.* ¶¶ 5, 12. The Superior Court dismissed Ngo's petition and Ngo appealed to this Court. *Id.* ¶ 5.

[¶ 15] Again we affirmed the decision of the trial court. *Id.* ¶ 1. We concluded that Ngo did not satisfy any of the jurisdictional requirements of the post-conviction review statute because he could not demonstrate a present restraint or impediment resulting from his conviction, as required by the statute. *Id.* ¶ 9; *see* 15 M.R.S. § 2124. We noted that deportation proceedings are civil proceedings and that, unlike imprisonment, deportation is not imposed as a punishment. *Id.* ¶¶ 10–11. Ngo's constitutional claim was similarly unsuccessful because, based on the civil nature of deportation, there is a "rational distinction between Ngo's situation and the restraints and impediments described by section 2124, which are all imposed by a government as a criminal punishment." *Id.* ¶ 16.

B. *Padilla v. Kentucky*

[¶ 16] Ali contends that the rationale for our decision in *Ngo II* is called into question by the Supreme Court's decision in *Padilla v. Kentucky* in 2010. *Padilla* addressed the tension between the civil nature of deportation and the severity of its consequences, in the context of a claim of ineffective assistance of counsel.[2] 130 S.Ct. at 1480–82. Although the Court declined to classify deportation as either a direct or collateral consequence of a criminal conviction, the decision recognized that deportation is "intimately related to the criminal process" and that criminal convictions and the "penalty" of deportation are "enmeshed." *Id.* at 1481.

[¶ 17] Contrary to Ali's argument, we need not decide whether *Padilla* requires us to reconsider our holding in *Ngo II* in order to resolve this case. Ali has brought his claim of ineffective assistance of counsel through a motion for a new trial—and not through the post-conviction review process. Because *Padilla* does not call into question the basis for our decision in *Ngo I,* we adhere to it in deciding this appeal.

C. Ali's Motion for a New Trial

[¶ 18] Ali argues that he should be granted a new trial based on newly discovered evidence because he was deprived of the effective assistance of counsel when his attorney failed to give him accurate advice regarding the immigration consequences of his guilty plea. Although Ali moved for a new trial well after the two-year deadline imposed by Rule 33, Ali contends that, considered together, Rules 1, 2, and 33 of the Maine Rules of Criminal Procedure compel this Court to find that a new trial is the appropriate procedure through which to obtain the relief he seeks, namely an opportunity to move the court to vacate his conviction based on ineffective assistance of counsel.[3] Ali ar-

---

2. The Court held that "counsel must inform her client whether his plea carries a risk of deportation," noting that "longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less." *Padilla v. Kentucky,* —— U.S. ——, ——, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010). *Padilla* acknowledged that defense attorneys have a duty to correctly advise their clients of the immigration consequences of criminal convictions, particularly when the consequences are "truly clear," as they were in Padilla's case. *Id.* at 1483.

3. M.R.Crim. P. 1 provides, in relevant part:

(c) **Procedure When None Specified.** When no procedure is specifically prescribed the court shall proceed in any lawful manner not inconsistent with the Constitution of the United States or of the State of Maine, these rules or any applicable statutes.

gues that this is his only path to relief because the post-conviction review process is unavailable to him based on our decision in *Ngo II*.

[¶ 19] As previously noted, *Ngo I* addressed the use of Rule 1 to raise an ineffective assistance of counsel claim in a similar factual context. *Ngo I*, 2007 ME 2, ¶¶ 2–3, 912 A.2d 1224. We affirmed the trial court's dismissal of a similar motion, noting that Ngo should have sought relief pursuant to the post-conviction review statute:

> The fact that a party has not availed himself of the specified rule or statute in a proper and timely manner, or anticipates that the procedure may not provide complete relief or would be unconstitutional as applied, does not change the fact that a procedure has been made available.

*Id.* ¶ 6.

 [¶ 20] Ali's claim is similarly under the purview of the post-conviction review process. We do not consider claims of ineffective assistance of counsel on direct appeal; such claims will only be considered after a certificate of probable cause has been issued following a hearing on a post-conviction petition. *State v. Nichols*, 1997 ME 178, ¶ 4, 698 A.2d 521. Our precedents uniformly hold that when a direct appeal is not available, post-conviction review is "the exclusive method of review of those criminal judgments." 15

M.R.S. § 2122 (2010); *see State v. Trott*, 2004 ME 15, ¶¶ 5, 13, 841 A.2d 789 (concluding that post-conviction review in the Superior Court is the proper forum for a claim of ineffective assistance of counsel); *see also Aldus v. State*, 2000 ME 47, ¶ 11, 748 A.2d 463 (considering on appeal an ineffective assistance of counsel claim brought by a noncitizen facing deportation using the post-conviction review procedure). Further, we have rejected attempts by defendants similarly situated to circumvent the post-conviction review process. *See State v. Blakesley*, 2010 ME 19, ¶¶ 23–24, 989 A.2d 746 (concluding that the common law remedies of *coram nobis* and *audita querela* have been "explicitly precluded [by the Legislature's creation of] a system of post-conviction relief"). In sum, a motion for a new trial is not the proper vehicle by which to raise an ineffective assistance of counsel claim because the post-conviction review process is the exclusive means of review for such a claim.

[¶ 21] Rules 2 and 33 of the Maine Rules of Criminal Procedure do not change this analysis. Rule 2 expresses the purpose of the Rules of Criminal Procedure and notes that the rules "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." M.R.Crim. P. 2. Rule 2 does not, however, provide for the application of an

---

M.R.Crim. P. 2 provides:

> These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

M.R.Crim. P. 33 provides, in relevant part:

> The court on motion of the defendant may grant a new trial to the defendant if required in the interest of justice. If the trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct entry of a new judgment.
>
> A motion for a new trial based on any ground other than newly discovered evidence shall be made within 10 days after verdict or finding of guilty or within such further time as the court may fix during the 10–day period. Any motion for a new trial based on the ground of newly discovered evidence may be made only before, or within 2 years after, entry of the judgment in the criminal docket.

inappropriate procedure where an appropriate procedure already exists.

[¶ 22] Rule 33 is similarly inapplicable. Ali asserts that the fact of his imminent removal is newly discovered evidence that makes him eligible for a new trial pursuant to Rule 33. *See* M.R.Crim. P. 33. However, such a motion must be filed within two years after entry of the judgment in the criminal docket. *Id.* Ali's motion was filed approximately two years and five months after the judgment was entered; thus, the motion was not timely. We have previously interpreted the time limits in Rule 33 narrowly and, in view of our conclusion that a post-conviction proceeding is the proper forum for Ali's claim, we see no reason to depart from that interpretation here. *See, e.g., State v. Clark,* 488 A.2d 1376, 1378 (Me.1985) (declining to consider whether ineffective assistance of counsel may be raised on a motion for a new trial because the defendant's motion was not timely filed); *State v. Campbell,* 451 A.2d 299, 300 (Me.1982) (holding that the defendant could not avoid the two-year limit of Rule 33 by filing a motion for reconsideration instead of a motion for a new trial where the remedy sought was the same as that of the time-barred motion).

[¶ 23] Ali must avail himself of the post-conviction review process, even if, as he argues, it is unclear that his claim can succeed.[4] We cannot decide here if, in light of *Padilla,* the post-conviction review procedure is unconstitutional as applied to Ali's circumstances because Ali has not attempted to avail himself of that process. We thus affirm the judgment of the Superior Court.

The entry is:

Judgment affirmed.

SILVER, J., dissenting.

[¶ 24] I respectfully dissent on the same basis expressed in my dissent in *State v. Ngo,* 2007 ME 2, 912 A.2d 1224 (*"Ngo I"*). As it was in *Ngo I,* it is our obligation to ensure that Ali has an opportunity to present the merits of his position. The majority risks denying Ali that opportunity by prohibiting him from presenting his claims pursuant to M.R.Crim. P. 1(c) without first determining whether any relief is available to him pursuant to 15 M.R.S. § 2124 (2010).

[¶ 25] Our decision in *Ngo v. State* suggests that post-conviction review is unavailable to Ali because, as a noncitizen awaiting deportation after serving a criminal sentence, he is not "restrained" for the purpose of section 2124(1). *Ngo v. State,* 2008 ME 71, ¶¶ 9, 11, 946 A.2d 424 (*"Ngo II"*). Our holding in that case and similar cases was based on the view that deportation is a civil, collateral consequence of conviction. *Id.* ¶¶ 10–11; *accord State v. Blakesley,* 2010 ME 19, ¶¶ 26, 29, 989 A.2d 746; *State v. Trott,* 2004 ME 15, ¶ 9, 841 A.2d 789; *see also Aldus v. State,* 2000 ME 47, ¶ 18 n. 6, 748 A.2d 463. The United States Supreme Court's conclusion in *Padilla v. Kentucky* that "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes" calls the validity of our reasoning in these cases into question. —— U.S. ——, ——, 130

---

4. Ali may still be able to bring his ineffective assistance of counsel claim through the post-conviction review process, if he so chooses. *See* 15 M.R.S. § 2128(5) (2010); *Diep v. State,* 2000 ME 53, ¶ 6, 748 A.2d 974 (permitting defendant's claim to proceed beyond summary dismissal, pursuant to 15 M.R.S. § 2128(5)(C), where defendant claimed that he did not discover, and could not have discovered through due diligence, that his attorney had given him incorrect advice regarding his plea until the INS detained him and began deportation proceedings).

S.Ct. 1473, 1480, 176 L.Ed.2d 284 (2010). Ali now invites us to reconsider the issue by asking us to decide whether *Padilla* applies retroactively.

[¶ 26] Whether *Padilla* applies retroactively is a purely legal issue. The resolution of this issue does not require any evidentiary fact-finding or a certain procedural context. Other states have already addressed this issue, *see e.g., Commonwealth v. Clarke*, 460 Mass. 30, 949 N.E.2d 892, 895–904 (2011), and Ali has given us the opportunity to do the same by properly presenting it to the Superior Court and adequately addressing it on appeal. *Cf. Ngo I*, 2007 ME 2, ¶ 7, 912 A.2d 1224. We have already declined to address underlying constitutional issues in *Ngo II* and *Trott*, and as *Padilla* recognizes, the post-conviction rights of noncitizen defendants is a quickly-evolving and topical area of law that deserves the Court's attention sooner rather than later. *See Padilla*, 130 S.Ct. at 1478–80. For these reasons the Court can and should resolve this issue now before waiting for Ali to file a petition for post-conviction review. More importantly, we should address this issue before foreclosing the option of seeking relief through M.R.Crim. P. 1(c) because that will be Ali's only possible source of recourse if the Court determines that *Padilla* is not retroactive.

[¶ 27] As it was in *Ngo I*, requiring Ali to address his constitutional claim through post-conviction review without first determining whether he will be able to do so unfairly obligates him to test our post-conviction review statute. It also risks putting Ali in the same situation as Loi Ngo: without any legal recourse, he will indefinitely remain in the unfortunate cate-

gory of noncitizens who, for political reasons, are unlikely to be deported but who remain subject to deportation at any times.[5] *See Ngo II*, 2008 ME 71, ¶ 3, 946 A.2d 424. I would avoid this result by holding that *Padilla* applies retroactively.

[¶ 28] To the extent that *Padilla* treats deportation as a penalty arising from a criminal judgment, it suggests that noncitizen petitioners subject to this penalty are entitled to review pursuant to section 2124. Only after confirming *Padilla*'s application to Ali could I concur with the majority that the proper vehicle for his constitutional claim is post-conviction review, because only then could I be sure that he would be able to pursue it. Otherwise, post-conviction review is unavailable to someone in Ali's circumstances and M.R.Crim. P. 1(c) should apply.

become a lawful permanent resident, but is unlikely to be deported until circumstances change. As counsel noted, he "has no immigration status whatsoever."

---

5. Counsel advised at oral argument that Ali has been ordered deported but conditionally released from detention, subject to supervision, because Somalia does not accept criminal deportees at this time. Ali can no longer